UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

CARL ANDREWS,

Defendant.

-------------------------------------------------------------------X

**MEMORANDUM AND ORDER RE: DEFENDANT'S POST-TRIAL MOTIONS AND IN ANTICIPATION OF SENTENCING**

20-CR-546 (GRB)

**GARY R. BROWN, United States District Judge:**

In a flurry of filings, including some matters filed *pro se*, defendant CARL ANDREWS challenges his indictment and the jury verdict finding him guilty of narcotics distribution charges following a trial in August 2021. Docket Entry ("DE") 118, 121. For the reasons that follow, the motions are denied.

The unusual procedural history of this case is summarized in the Court's April 23, 2021 Order, which is incorporated by reference herein. DE 39; *United States v. Andrews*, 2021 WL 1601113 (E.D.N.Y. Apr. 23, 2021). Consistent with that order, trial was held as to the narcotics count returned by a grand jury sitting in this District, which trial concluded on August 12, 2021, after the jury found Andrews guilty of narcotics distribution. DE 80. Notably, the sex trafficking charges, originally filed (and subject of a mistrial) in the Southern District of New York, remain pending, as does a motion to dismiss those charges for violation of the Speedy Trial Act.

Defendant now moves, both through his counsel, DE 118, 121, and, in one instance, in a *pro se* filing, to challenge the trial verdict as well as the indictment on several grounds, DE 118-6.

*A. Motions for a New Trial*

As to motions for a new trial filed under Rule 33, this Court has previously observed:

> Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although the Court "has broad[ ] discretion to grant a new trial under Rule 33[,]" it "nonetheless must exercise [its] Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances'." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)); *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "In other words, there must be a real concern that an innocent person may have been convicted" for the Court to grant such a motion. *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (internal quotations and citations omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33[.]" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal citations omitted).
>
> Trial judges "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses . . . . It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414 (internal citations omitted). "In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account. An objective evaluation is required." *Id.*

*United States v. Carpenter*, 520 F. Supp. 3d 290, 292 (E.D.N.Y. 2021), *aff'd,* 2022 WL 16960577 (2d Cir. 2022). As a general matter, the evidence at trial, which included testimony of several credible confederates buttressed by undercover narcotics transactions captured on video, proved overwhelming, ameliorating any "real concern that an innocent person may have been convicted." *Snype*, 441 F.3d at 140 Thus, the new trial motions face substantial obstacles.

Defendant's motions are readily dispatched:

    *1. The Missing Witness Charge*

Andrews contends that the failure to give a missing witness charge based on the purported failure of the Government to call a confidential informant to testify warrants a new trial. In response to this request by Andrews' trial counsel, the Court modified its charge over Government objection (removing an instruction advising that both sides had equal opportunity to call non-testifying witnesses), but declined to give a missing witness instruction. DE 83; Tr. 243-44, 253-55. The Court ruled that "the undercover officer testified to all of the pertinent materials such that the CI's additional information would be cumulative and excludable under 403 as well as potentially opening other problems for the defendant." Tr. 255. The CI was in a position to testify about additional drug purchases from Andrews, Tr. 41-46, 254, and the narcotics transactions in question were captured (in whole or part) on videos admitted into evidence and witnessed by a detective and a co-conspirator, both of whom testified. Moreover, his trial counsel argued forcefully and effectively on this point. Tr. 409-11.

An inference may be drawn from a party's failure to call a witness where "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction and fails to produce such witnesses." *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) (cleaned up) (quoting *Graves v. United States*, 150 U.S. 118, 121 (1893)). Of course, "[n]o instruction is necessary where the unpresented testimony would be merely cumulative." *Id.* Additionally, this Court's exercise of its discretion not to the give a missing witness charge is further mitigated where, as here, "the judge permitted defense counsel to argue the inference themselves in summation." *See id.* at 1170. Under the circumstances, a missing witness charge was inappropriate, and its absence resulted in no discernable prejudice.

### 2. Ineffective Assistance of Counsel

Andrews also moves for a new trial based upon purported ineffective assistance by his

3

trial counsel. An ineffective assistance claim requires a showing that defense counsel's representation fell below an objective standard of reasonableness and that, but for that deficient representation, there is a reasonable probability that the result at trial would have been different. S*trickland v. Washington*, 466 U.S. 668 (1984).

As an initial matter, as the Court stated on the record, defendant's trial counsel, Mr. Keating, provided far more than competent representation in this case; his advocacy on behalf of the defendant proved admirable. The Government's evidence was powerful and persuasive, and there are many situations in which lawyering skills cannot alter an outcome. This case, in which the defendant sold crack cocaine directly to law enforcement agents, and such sales were surreptitiously captured on electronic media, certainly falls within that category.

Defendant contends that Mr. Keating's representation was deficient in two respects: first, Andrews claims that Keating ignored his request to call and/or question certain witnesses. Andrews submits that Keating should have called (a) the CI to attack the testimony of an undercover detective concerning the detective's ability to observe the charged narcotics transactions (which, again, were captured in whole or part on video) and (b) a Suffolk County detective to testify about benefits bestowed on a cooperating witness and the inadvertent destruction of certain electronic data, including videos from a pole camera and texts with the cooperating witness relating to the aforementioned benefits. DE 118 at 12. As to the CI, there is no basis to believe that any exculpatory testimony could have been adduced, yet abundant reason to conclude that the CI could have further inculpated the defendant. DE 120 at 17. Regarding the detective, Keating vigorously cross-examined the cooperating witness about the benefits she received and the text messages, some or all of which were produced to defendant as the result of a search warrant. *Id.* at 18-19.

4

The pole camera issue, raised several times during these proceedings, relates to the following: as part of the underlying narcotics investigation, the Suffolk County Police Department ("SCPD") installed a camera outside of a Bayshore home implicated in some of the narcotics activity in this case, which was active between June and November 2018. *Id.* at 24. That camera captured both video footage as well as photos, time information and license plate data for every vehicle that passed by the home (known as "LPR Data"). *Id.* The Government produced the LPR Data, which included 17,000 entries to the defendant, but the video footage was destroyed as part of the SCPD's record retention policies and therefore became unavailable. *Id.* There is no reason to believe that the pole camera video contained anything exculpatory or even probative, and defendant has made no factual showing to suggest otherwise. *Id.* at 25-26. In light of the production of the LPR Data, it is difficult to imagine any way in which the defendant was prejudiced by the failure to produce the video material.

Thus, the decision made by Keating to not call the CI and the detective on these issues falls well within the tactical decision-making discretion afforded to counsel under *Strickland*. Further, defendant can make no showing of prejudice from these determinations and has not established a reasonable probability that these issues would have altered the outcome of the trial.

Finally, in a supplemental submission, Andrews asserts that his counsel was ineffective for failing to cross-examine a confederate concerning allegedly obstructive acts by Manuel Gomez, an investigator hired by Andrews (without the knowledge of his former attorneys), as Andrews claims her statements to be false. DE 121 at 2-4. As his prior counsel observed in requesting to be relieved, based on available information, Gomez "has quite a reputation for strong-arm tactics and multiple allegations of witness tampering." DE 42 at 2. In fact, one court has rendered extensive findings regarding obstructive conduct by Mr. Gomez. *See People*

5

*v. Neale*, No. 2028/2014 (N.Y. Sup. Ct. Nov. 1, 2018) (decision and order of Holder, J.). Andrew's prior counsel reasonably concluded that "[t]he actions of Mr. Gomez may implicate our client in witness tampering." DE 42 at 2. Based on the available information, the situation threatened to prove a Pandora's box for the defendant (with no demonstrable upside), and Mr. Keating responsibly discharged his responsibilities under *Strickland* in declining to pursue the issue.

### 3. Discovery Claims

Andrews seeks *vacatur* of the jury verdict and a new trial based on asserted discovery failures by the Government. DE 118 at 21-23. Largely duplicative of his ineffective assistance claim, Andrews bases this claim primarily on the failure to produce the text messages and pole camera videos discussed above. *Id*.

"A violation of Rule 16 does not automatically entitle a defendant to a new trial. A defendant seeking a new trial must show that the failure to disclose caused him substantial prejudice." *United States v. Vinas*, 910 F.3d 52, 60 (2d Cir. 2018) (cleaned up). The Second Circuit has identified four elements that bear on the question of substantial prejudice arising from a failure to produce discovery: (1) the nature of the unproduced evidence; (2) its relevance to critical issues in the case; (3) the reason for non-production and (4) the strength of the Government's untainted proof. *See United States v. Stevens*, 985 F.2d 1175, 1181 (2d Cir. 1993). None of these factors weighs in favor of defendant's motion. The evidence identified here appears largely tangential, if not entirely irrelevant, and duplicative of other discovery produced, and the Government's remaining evidence was overwhelming. Thus, Andrews has failed to demonstrate any prejudice, let alone substantial prejudice, from the omissions identified.

6

### B. Post-Verdict Challenges to the Indictment

In addition to his contentions regarding the trial, Andrews seeks to dismiss the indictment on several grounds. These applications are also easily resolved.

#### 1. Destruction of the Evidence

Reasserting arguments regarding the pole camera videos and the text data relating to the cooperating defendant described above, Andrews seeks dismissal of the indictment based on their destruction. DE 118 at 33-34. In seeking to dismiss an indictment based upon spoliation of evidence, a defendant bears a burden which is, naturally, even more demanding than that required for a new trial. "A criminal defendant moving for dismissal on the basis of spoliation of the evidence must make a two-pronged showing that the evidence possessed exculpatory value 'that was apparent before [it] was destroyed' and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Greenberg,* 835 F.3d 295, 303 (2d Cir. 2016) (quoting *California v. Trombetta,* 467 U.S. 479, 489 (1984)). Should a defendant satisfy these elements, he must then establish that the Government acted in bad faith. *Id.*

In light of the matters set forth above, including the provision of the massive LPR data set, defendant has not, and seemingly cannot, articulate any grounds to satisfy either element of the test, as there is no reason to believe that the pole camera videos were exculpatory in any manner, and certainly not in a manner that could not be obtained through other means, including the LPR data. Moreover, as discussed, the matters subject to text communications between the detective and the cooperating witness, which were produced in part, were the subject of thorough cross-examination and were destroyed due to a lost cellular telephone. Therefore, the motion to dismiss is denied.

7

### 2. *Prosecutorial Vindictiveness*

Without any factual support, defendant alleges that the decision to charge him with a narcotics trafficking charge in this district in December 2020, following his indictment in the Southern District of New York in February 2019, constitutes "vindictive prosecution" based on his refusal to plead guilty to the SDNY indictment. *See United States v. Andrews*, 2021 WL 1601113 at *1-3 (describing detailed procedural history).

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). As the Court further held:

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Id.* (cleaned up). This case involved far greater justification for the additional charges than a simple instance of prosecutorial "piling on." As discussed in this Court's earlier decision, the original charges went to trial, which was interrupted due to the COVID pandemic and resulted in mistrial, and a subsequent venue issue yielded a transfer to this Court. *Andrews*, 2021 WL 1601113, at *1-2. Under these highly unusual procedural circumstances, which included uncertainty about venue and speedy trial issues, consideration of additional charges by the prosecutors proves unsurprising. Indeed, a failure by the prosecutors to explore these charges could well have been characterized as irresponsible.

*3. Defects in the Composition of the Grand Jury.*

Defendant moves for dismissal of the indictment based on defects in the grand jury selection process. DE 121 at 4-7. However, defendant presents neither factual nor legal bases for such a claim and fails to identify the supposed flaws subject to complaint. *See generally* DE 121. Moreover, the defendant's only legal support constitutes references to *United States v. Corbett*, 2021 WL 5588816 (E.D.N.Y. Nov. 30, 2021) and related opinions, in which Judge Matsumoto, in a careful and thoughtful analysis, found that purported defects in this district's grand jury selection plan did not warrant dismissal of an indictment from the very same grand jury at issue here. Thus, for the reasons set forth in *Corbett*, as well as the defendant's failure to articulate a comprehensible argument, this motion to dismiss the indictment is denied.

*4. Andrew's Pro Se Arguments are Meritless*

Defendant has insisted that his attorney file a motion suggesting that the federal government lacks authority to enforce laws pertaining to narcotics and interstate sex trafficking because the states have not ceded such authority to the federal government. DE 118-6. This argument, and any other argument that might be extracted from the *pro se* brief submitted by the defendant (Ex. 6 to defendant's motion) is entirely meritless.

**Conclusion**

Based on the foregoing, Andrews motions to dismiss the indictment and/or for a new trial as to the narcotics charges are DENIED.

**Considerations in Advance of Sentencing**

The Court has not, as yet, ruled on the pending motion to dismiss the sex trafficking charges on Speedy Trial grounds. Sentencing as to the verdict regarding the narcotics count is set to take place shortly. As suggested by this Court's Order of August 15, 2021, the Court is

9

considering whether the conduct underlying the pending sex trafficking charges constitute relevant conduct or may warrant an upward departure consistent with the policy statement contained in U.S.S.G. § 5K2.21 of the Sentencing Guidelines or other pertinent provisions. Thus, defendant is hereby placed on notice that the Court is considering the possibility of an upward departure or variance, and the parties should be prepared to advance any arguments and/or proceed with any necessary evidentiary hearings.  Immediately following the sentencing, the Government should be prepared (and fully authorized) to state its position regarding the need for further pursuit of the sex trafficking charges and both sides should be ready to argue the pending motion to dismiss on Speedy Trial grounds.

**SO ORDERED.**

Dated: Central Islip, New York
June 13, 2023

/s/ Gary R. Brown
Gary R. Brown
United States District Judge