FILED
CLERK

1/28/2025 12:38 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                           **ORDER RE: GRANT OF EXECUTIVE CLEMENCY**

           -against-

CARL ANDREWS,                                   20-CR-546 (GRB)

                                Defendant.
------------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

      The Constitution of the United States entrusts presidents with the "Power to grant Reprieves and Pardons for Offences against the United States." Article II, Section 2, Clause 1. For more than a century, presidents have relied upon the Pardon Attorney, a non-political, non-prosecutorial officer of the Justice Department, "to provide neutral advice and expertise on clemency" and make "recommendations to the President that are consistent, unbiased, and uphold the interests of justice."[1] Those who would seek the exercise of this extraordinary remedy are advised that:

> The pardon process can be lengthy as it is a rightfully thorough process. The evaluation of a pardon application may take several years from start to finish.[2]

Under Department of Justice procedures, applicants for executive clemency generally

> must satisfy a minimum waiting period of five years before he becomes eligible to apply for a presidential pardon of his federal conviction. The waiting period … is designed to afford the petitioner a reasonable period

---

[1] https://www.justice.gov/pardon/about-office [https://perma.cc/L5LY-KF5A]
[2] https://www.justice.gov/pardon/file/898541/dl [https://perma.cc/7E6L-ANY3]

1

of time in which to demonstrate an ability to lead a responsible, productive and law-abiding life.[3]

As a result of this exacting process, presidential pardons and grants of clemency have generally been uncommon, usually ranging from a few dozen to several hundred in any given year.[4]

That is until now. In less than a month, the federal courts have been inundated by more than 5,500 mass pardons and grants of executive clemency that seemingly bypassed the rigorous vetting processes developed over the last century. This case is one of them.[5]

This opinion should not be construed as criticism of the reasons underlying the pardons and grants of clemency.[6] Two presidents of contrasting ideology have issued

---

[3] *Id.*

[4] https://www.justice.gov/pardon/clemency-statistics [https://perma.cc/WL6G-2Y8R].

[5] Other mass pardons have already been the subject of judicial criticism. *See United States v. DeCarlo,* No. 21-CR-73 (BAH), 2025 WL 266308 (D.D.C. Jan. 22, 2025); *United States v. Box,* No. 22-CR-413 (CKK), 2025 WL 289463 (D.D.C. Jan. 22, 2025); *United States v. Guardino,* No. 24-CR-458 (BAH), 2025 WL 275609 (D.D.C. Jan. 23, 2025); *United States v. Amos,* No. 24-CR-395 (BAH), 2025 WL 275639 (D.D.C. Jan. 23, 2025); *United States v. Jovanovic,* No. 25-CR-15 (BAH), 2025 WL 266551 (D.D.C. Jan. 22, 2025); *United States v. Gonzalez,* No. 24-CR-562 (BAH), 2025 WL 275605 (D.D.C. Jan. 23, 2025); *United States v. Sidow,* No. 24-CR-492 (BAH), 2025 WL 266562 (D.D.C. Jan. 22, 2025); *United States v. Conemac,* No. 24-CR-462 (BAH), 2025 WL 266560 (D.D.C. Jan. 22, 2025); *United States v. Mullsteff,* No. 23-CR-330 (BAH), 2025 WL 266494 (D.D.C. Jan. 22, 2025); *United States v. Dahlquist,* No. 24-CR-443 (BAH), 2025 WL 270608 (D.D.C. Jan. 22, 2025); *United States v. Giusini,* No. 24-CR-318 (BAH), 2025 WL 275683 (D.D.C. Jan. 23, 2025); *United States v. Mangia,* No. 23-CR-288 (BAH), 2025 WL 266493 (D.D.C. Jan. 22, 2025); *United States v. Williams,* No. 21-CR-377 (BAH), 2025 WL 266565 (D.D.C. Jan. 22, 2025); *United States v. Banuelos,* No. 24-CR-135 (TSC), 2025 WL 294158 (D.D.C. Jan. 22, 2025).

[6] "As the Supreme Court has long recognized, the President's power to pardon is 'unlimited.'" *In re Grand Jury Subpoenas dated Mar. 9, 2001,* 179 F. Supp. 2d 270, 282

2

mass pardons and grants of clemency for very different purposes.  While history may judge the wisdom of these actions, this Court may not.   However, this case, and others like it, spotlight the problems that invariably arise when a president's unreviewable pardon authority is deployed impetuously, resulting in careless execution of the president's directives.

In this matter—involving sex trafficking, narcotics distribution and perjury—the grant of executive clemency seems inconsistent with its purported rational.  This Court must abide by this action, while exercising its responsibility regarding the vestige of the sentence imposed, *i.e.*, oversight of the defendant during a four-year period of supervised release.

*Background*

The lengthy and detailed record of this case has been discussed in four readily available district court opinions and a decision by the Second Circuit Court of Appeals, incorporated herein by reference.  *See United States v. Andrews*, No. 23-6724-cr, 2024 WL 5134970 (2d Cir. Dec. 17, 2024), *affirming United States v. Andrews,* No. 20-CR-546 (GRB), 2023 WL 3997168, at *1 (E.D.N.Y. June 13, 2023); *United States v. Andrews*, No. 20-CR-546 (GRB), 2021 WL 1601113, at *1 (E.D.N.Y. Apr. 23, 2021); *United States v. Andrews*, No. 19

---

(S.D.N.Y. 2001), quoting *Ex Parte Garland,* 71 U.S. 333, 380, 4 Wall. 333, 18 L.Ed. 366 (1866) *and citing United States v. Klein*, 80 U.S. 128, 147, 13 Wall. 128, 20 L.Ed. 519 (1871) ("To the executive alone is intrusted the power of pardon; and it is granted without limit.").

3

cr 131 (PAE), 2020 WL 4431822, at *1 (S.D.N.Y. July 31, 2020); *United States v. Andrews*, No. 19 cr 131 (PAE), 2020 WL 3182911, at *1 (S.D.N.Y. June 15, 2020).

The case was tried twice: first, the Southern District of New York commenced a trial on the sex trafficking charges, which ended in a mistrial due to the COVID-19 pandemic. 2021 WL 1601113, at *1. After a change of venue, the Government added charges involving crack distribution, which were tried before a jury in this district. 2023 WL 3997168, at *1. The evidence of guilt was overwhelming, as it "included testimony of several credible confederates buttressed by undercover narcotics transactions captured on video." *Id.* The jury found the defendant guilty, and the Court sentenced the defendant to 115 months in custody followed by four years of supervised release, a sentence that the Second Circuit Court of Appeals found to be "reasonable" and "supported by evidence at the sentencing hearing." 2024 WL 5134970, at *3.

*The Clemency Grant*

Less than a month after the Second Circuit's opinion, an Executive Grant of Clemency applicable to approximately 2,500 convicted defendants, including Carl Andrews, issued on January 17, 2025. That document, filed in this Court on January 21, 2025, commutes his sentence, setting it to expire on March 18, 2025, while "leaving intact and in effect the term of supervised release." DE 138 at p. 5.

A public statement issued explaining the January 17, 2025 clemency grants:

> Today, I am commuting the sentences of nearly 2,500 people convicted of non-violent drug offenses who are serving disproportionately long sentences compared to the sentences they would receive today under current law, policy, and practice.

4

> Today's clemency action provides relief for individuals who received lengthy sentences based on discredited distinctions between crack and powder cocaine, as well as outdated sentencing enhancements for drug crimes. As Congress recognized through the Fair Sentencing Act and the First Step Act, it is time that we equalize these sentencing disparities. This action is an important step toward righting historic wrongs, correcting sentencing disparities, and providing deserving individuals the opportunity to return to their families and communities after spending far too much time behind bars.[7]

This reasoning is inapplicable to this case.

*"Non-violent drug offenses"*

This case cannot be reasonably characterized as involving a person "convicted of non-violent drug offenses."  The defendant, an individual with 17 prior convictions including assault, larceny, resisting arrest, criminal contempt and drug possession, DE 131 at 8, was initially charged with "sex trafficking by force, fraud or coercion."  DE 1 at 1-2.  Only later were charges of crack distribution added.  The two crimes were far from unrelated, as this Court found that defendant "used his access to crack cocaine to exploit [the victim's] addiction to further profiteer from prostitution activities," a determination that the Second Circuit held was fully supported by the evidence.  2024 WL 5134970, at *3.  The judge in the Southern District of New York made similar findings.  DE 131 at 10-11.

Additionally, the victim credibly testified that, on multiple occasions, the defendant threatened violence to ensure her continued participation in the defendant's

---

[7] https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2025/01/17/statement-from-president-joe-biden-on-additional-clemency-actions/ [https://perma.cc/WJV8-D5S3]

5

exploitation. *Id.* Moreover, he used other coercive techniques, including, as the judge in the Southern District noted, "exploit[ing] her addiction and poverty and emotional fragility to induce her to sell her body for profit." *Id.* at 11. Thus, the charges and evidence against this defendant involved far more than non-violent drug violations.

*"Sentences based on discredited distinctions between crack and powder cocaine"*

At the time of defendant's sentencing, the enhanced Guidelines range for crack cocaine remained the law, providing a recommended sentence of 121 to 151 months. *Id.* at 8. However, the Government advocated for use of the powdered cocaine guidelines and the Court expressly accepted this position. *Id.* ("[T]o avoid any issue should Congress adopt the changes being urged upon it, the Court has opted to use the powdered cocaine Guidelines."). As required under current law, the Court used the powdered cocaine Guidelines—which in this case called for a sentence between 78 to 97 months—as its starting point, ultimately arriving at a sentence above those Guidelines but below the advisory range for a crack conviction. *Id.* at 8–12. Thus, the sentencing distinction between crack and powdered cocaine played no role in defendant's sentence.

*"Disproportionately long sentences compared to the sentences under current law"*

At sentencing, the Court made it plain that the sentence imposed here—115 months—constituted an upward variance from the powdered cocaine Guidelines range, based on four principal factors: (1) exploitation of narcotics addiction to compel the victim to engage in sex work; (2) the defendant's significant criminal record, including the use of a tire iron and a club to attack two men, which demonstrated a "pattern of

6

recidivism"; (3) defendant's lack of remorse, which included giving false testimony and hiring a "detective" who engaged in witness intimidation, and (4) the sex trafficking activity. *Id.* at 8-9. These considerations are fully consistent with the sentencing framework currently provided by Congress in 18 U.S.C. § 3553(a).

Notably, had defendant been convicted of the sex trafficking charges, he would have faced a fifteen-year mandatory minimum. The Government, however, was willing to accept the sentence imposed—approximately nine and a half years—in satisfaction of all charges, even though the sex trafficking charges appeared readily provable. Thus, Mr. Andrews received a sentence *lower* than that required by current law.

*Disparities Subject to Correction under "The Fair Sentencing Act" and "The First Step Act"*

The Fair Sentencing Act, referenced in the justification statement, eliminated the statutory distinction between crack and powdered cocaine. Pub. L., No. 111-220, 124 Stat. 2372. Since the Court treated the conviction as one for powdered cocaine, the sentence imposed was fully consistent with this provision.

The First Step Act provides defendants the opportunity to obtain additional review by courts of sentences imposed. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."). There has been no want of review concerning Mr. Andrews. His case was litigated vigorously before two district courts, resulting in four published district court opinions. His sentence was carefully imposed

7

by this Court and reviewed on appeal by the Second Circuit Court of Appeals, which found, one month before the clemency grant, that the rationale for imposing a 115 month sentence was "reasonable" and "supported by evidence at the sentencing hearing." 2024 WL 5134970, at* 3. Moreover, defendant has already filed a First Step Act application, leading to further reconsideration of his sentence by this Court. DE 135; Electronic Order of August 11, 2023. Thus, neither the Fair Sentencing Act nor the First Step Act weighs in favor of commuting defendant's sentence.

> *"Providing deserving individuals the opportunity to return to their families and communities after spending far too much time behind bars"*

In this case, the Court found that defendant "testified falsely on several material matters" at a sentencing proceeding in June 2023. DE 139 at 109. Throughout the proceeding, he failed to accept responsibility and showed no remorse. *Id.* at 160. Indeed, "[h]e took the stand with many of his family members present and unabashedly described his narcotics dealing activities," and yet "ha[d] not expressed a morsel of remorse or regret." *Id.* at 163.

Given this record, it is hard to classify the defendant as a "deserving individual." None of the remaining justifications for the grant of clemency appear to apply here. Certainly, the traditionally rigorous review process would have revealed these facts, and even an abbreviated procedure would have counseled against the exercise of the former President's pardon authority in this case—and others like it.[8]

---

[8] This case does not represent the only misapplication of the justification for the January 17, 2025, exercise of executive clemency. In another case on that list also before the

8

*Conditions of Supervised Release*

The clemency grant expressly left intact any period of supervised release imposed. DE 138 at 5. At the time of sentencing, this Court imposed a four-year term of supervised release to help ensure the successful reintegration of the defendant following the completion of his prison term. The Court imposed, without objection, the special conditions of supervised release recommended by the Probation Department. DE 139 at 170–71. The Court will oversee the defendant's compliance with these conditions.

The Second Circuit has recently reemphasized that, prior to embarking on a period of supervised release, "a defendant has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct is prohibited so that he may act accordingly." *United States v. Sims*, 92 F.4th 115, 125 (2d Cir. 2024) (reiterating that "we have interpreted Rule 43(a)(3) to require that the sentencing court orally pronounce special conditions in open court"). Particularly in light of the commutation of his sentence, the defendant should be reacquainted with the conditions of supervised release. Therefore, the United States Attorney is hereby directed to arrange to produce the defendant in Court on or before his release on March 18, 2025, so that the Court can ensure that Mr. Andrews is fully advised of what will be

---

undersigned, the defendant "was sentenced at the statutory mandatory minimum for a single narcotics offense, but that plea was accepted in satisfaction of several violent, gang-related offenses." *U.S. v. Robinson*, 17-CR-106, Electronic Order Dated 1/4/2023 (rejecting First Step Act petition). Those additional offenses included "several attempted murders and conspiracy to commit murder." DE 355 at 2. In one incident, the defendant shot a rival gang member seven times. DE 286 at 8.

expected of him.  Counsel for Mr. Andrews will also be present at that time.

    **SO ORDERED.**

Dated: Central Islip, New York
      January 28, 2025

                                        <u>/s/ Gary R. Brown</u>
                                        Gary R. Brown
                                        United States District Judge